Over 100 persons sued the University of South Alabama's board of trustees, its president, and its director of personnel relations (hereinafter, collectively referred to as "the University"). The plaintiffs, all of whom are, or were at one time, employees of the University, asked the trial court to affirmatively enjoin the University to implement the provisions in its employee handbook by providing annual job performance evaluations for each plaintiff and to recalculate merit pay and salary increases after performing the evaluations.
Over 60 of the plaintiffs settled their claims against the University. The trial court ordered the University to perform retroactive *Page 1328 
job performance evaluations on the remaining 56 plaintiffs for each fiscal year beginning with the year 1984/85 and ending with the year 1991/92. The University complied with the trial court's order; however, those plaintiffs objected, alleging that the University had failed to complete the evaluations in good faith. The trial court appointed a master, pursuant to Rule 53, Ala.R.Civ.P., to hold hearings to determine whether the University had prepared the evaluations in good faith. A number of the plaintiffs settled their disputes before the hearings began, and the master referred one plaintiff's case to the trial court because of a possible conflict. Therefore, although there were over 100 original plaintiffs, the master's findings concerned only 13 plaintiffs (hereinafter, "employees").
On November 3, 1994, the master released his report, finding that the University had performed in good faith. On November 10, 1994, the employees filed objections to the master's report, pursuant to Rule 53(e)(2), Ala.R.Civ.P. The employees, on November 18, 1994, moved the trial court to set aside the master's findings, because of an alleged partiality. On April 7, 1995, after a hearing, the trial court entered a final judgment in favor of the University. The employees appeal, contending that the trial court erred: (1) in adopting all aspects of the master's report; (2) in holding that the employees had waived their right to raise the issue of the master's partiality; and (3) in refusing to strike the master's report on the grounds that he was not impartial. We address each of the employees' contentions in turn.
 Master's Findings
In a nonjury action, the findings of a master are given the same weight as a jury verdict and, therefore, will not be disturbed on appeal unless clearly erroneous or plainly and palpably wrong. Burgess Mining Constr. Corp. v. Lees,440 So.2d 321, 327 (Ala. 1983). To the extent that a trial court has adopted the findings of a master, the same standard applies.Id.
The master found that the University had performed the retroactive evaluations in good faith. The employees argue that the findings are clearly erroneous, because, they say: (1) the evaluations contained little or no commentary about each employee's performance; (2) the University personnel who prepared the retroactive evaluations lacked first-hand knowledge of the employees' job performance; and (3) the master applied different criteria to evidence presented by the employees, as opposed to evidence presented by the University.
After reviewing the record, we do not agree. The fact that the evaluations did not contain extensive commentary is irrelevant. The performance evaluation forms provide a series of numerical rankings for each skill or quality evaluated. Each numerical ranking corresponds with a brief explanation; thus, commentary is not necessary or required. The University personnel who performed the evaluations had, in almost every case, firsthand knowledge of the employee under review. In those few cases where the evaluator was not the employee's immediate supervisor, the master's report states that the evaluator spoke to those having first-hand knowledge of the employee's performance and/or relied upon the employee's personnel file in making the retroactive evaluations. There is no evidence that the master applied different criteria to evidence presented by the employees, as opposed to evidence presented by University. Accordingly, the master's findings are not clearly erroneous, and the trial court did not commit reversible error in adopting them.
 Issue of Partiality
If a party has knowledge of a judge or master's partiality and that information may support a recusal, the party may not lie in wait and raise the issue of recusal after learning the outcome of the proceeding. Phillips v. Amoco Oil Co.,799 F.2d 1464, 1472 (11th Cir. 1986), cert. denied, 481 U.S. 1016,107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).
The trial court held that the employees had waived their right to raise the issue of the master's alleged partiality because they failed to object in a timely manner. The employees argue that the trial court *Page 1329 
committed reversible error in so holding. We disagree.
The employees learned of the facts surrounding the master's alleged partiality before October 17, 1994. Upon the request of the employees' counsel, the master referred the one case in which he allegedly had a conflict to the trial judge for disposition, thereby avoiding any impropriety. The master's inquiry continued, and he issued his findings on November 3, 1994. The employees filed objections regarding the nature of the master's findings on November 10, 1994. On November 18, 1994, a full month after learning about the master's alleged partiality, the employees moved the trial court to set aside the master's findings for that reason. The facts surrounding the master's alleged partiality were clear from the time the employees first learned about it until they moved the trial court to set aside the master's findings. Nothing in the record indicates that the employees were gathering more information regarding the master's alleged partiality; thus, the employees had no reason to delay raising the issue until after the master had released his report. Accordingly, the trial court did not err in holding that the employees had waived their right to raise the issue of the master's alleged partiality.
The employees also argue that the trial court erred when it refused to strike the master's report because of his alleged partiality. Although our holding regarding the employees' waiver of their right to request the master's recusal means that this last issue is essentially moot, we will briefly address the employees' contention.
In Hall v. Mazzone, 540 So.2d 1353, 1356 (Ala. 1988), the supreme court stated:
 " '[A] judge [and appointed master] is presumed to be qualified and unbiased, with the burden on the moving party to prove to the contrary. Furthermore, the degree of prejudice necessary for disqualifying a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case. It must be of a character, personal in nature, calculated to seriously impair his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity. Thus, it can be said that recusal is required . . . when facts are such that a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find that there is a reasonable basis for questioning the judge's impartiality, and there is proof of supporting facts.' "
(Insertion in original.) (Citations omitted.)
Although the master had once represented a supervisor who worked for the University in a hearing before the Alabama Ethics Commission, he had never represented the University itself. We conclude, therefore, that a person of ordinary prudence in the master's position would not have found a reasonable basis for questioning the master's impartiality.
AFFIRMED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., concurs in the result.